# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KARUM HOLDINGS, LLC; KARUM GROUP, LLC; KARUM LATIN AMERICA S. de R.L. de C.V.; and KARUM CARD SERVICES S.A. de C.V., SOFOM, E.N.R., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 15-cv-0380 |
| v. | ) ) | Judge John Z. Lee |
| LOWE'S COMPANIES, INC.; and LOWE'S COMPANIES MEXICO, S. de R.L. de C.V., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Karum Holdings, LLC ("Karum Holdings"), Karum Group, LLC ("Karum Group"), Karum Latin America S. de R.L. de C.V. ("Karum LA"), and Karum Card Services S.A. de C.V., SOFOM, E.N.R. ("KCS") (collectively "Karum") have filed a complaint against Defendants Lowe's Companies, Inc. ("Lowe's Inc.") and Lowe's Companies Mexico, S. de R.L. de C.V. ("Lowe's Mexico") (collectively "Lowe's"), alleging that Lowe's breached a series of agreements, whereby Karum agreed to provide credit card services for Lowe's' stores in Mexico. According to the Complaint, three writings set forth the parties' contractual relationship: the Private Label Credit Card Program Agreement ("Program Agreement"); the Master Credit Services Agreement ("Services Agreement"); and the Profit Sharing and Funding Agreement ("Funding Agreement").

Lowe's has filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss (1) all claims predicated upon the Services Agreement, and (2) all claims Plaintiffs have asserted on behalf of Karum LA. For the reasons provided herein, the motion to dismiss is granted.

## I. Factual Background[1]

In 2009, Lowe's and Karum agreed that Karum would provide Lowe's stores in Mexico with a Private Label Credit ("PLC") program. Compl. ¶ 5. Three writings referenced in the Complaint and incorporated as exhibits memorialized the PLC program: the Program Agreement; the Funding Agreement; and the Services Agreement).[2] Each contract contains a choice of law provision adopting New York state law. *Id.* ¶ 6(o).

After its growth in Mexico fell short of projections, Lowe's sought to terminate the agreements on August 21, 2014. *Id.* ¶ 13, 16. Karum alleges that, in doing so, Lowe's knowingly breached numerous aspects of the various agreements. *See id.* ¶ 16. The Court will outline each of the three agreements in turn.

---

[1] When reviewing a defendant's motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in a plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Furthermore, a copy of any written instrument attached as an exhibit to a complaint is considered to be part of the pleadings. Fed. R. Civ. P. 10(c); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

[2] For much of the Complaint, these contracts are referred to collectively as "the Agreements." *See, e.g.,* Compl. ¶¶ 14, 15, 21.

### A. The Program Agreement

KCS, a subsidiary of Karum, was intended to be a joint venture between Lowe's and Karum to service the PLC program. *Id.* ¶¶ 1, 7. The Program Agreement provides that KCS would issue credit cards to customers of Lowe's Mexico. *Id.* ¶ 10; *see also id.* Ex. 1, Program Agreement, at 5. It further establishes the general obligations of Karum and Lowe's in administering the PLC program. Compl. ¶ 10. Dated February 10, 2010, the Program Agreement was signed by KCS, Karum Holdings, and Lowe's Mexico. *Id.* ¶ 5; *Id.* Ex. 1, Program Agreement, at 1. According to Karum, Lowe's breached several provisions of the Program Agreement, including those providing Karum with the right of first refusal for any loyalty programs, gift cards or special credit programs; those addressing contractual governance; and those requiring Lowe's to cooperate with Karum on day-to-day business issues. Compl. ¶¶ 13(h), 13(i), 26.

### B. The Funding Agreement

Signed four years after the Program Agreement, the Funding Agreement adjusted funding and profit percentages with respect to the operation of KCS. *Id.* ¶ 11. Because disproportionate funding had become a burden for Karum (although it is unclear for which Plaintiff), the Funding Agreement specified that Lowe's would satisfy 99% of KCS's funding and receive 99% of KCS's profits on a going forward basis. *Id.* The Funding Agreement was entered into by KCS, Karum Group, Karum Holdings, and Lowe's Mexico on April 4, 2014. *Id.* ¶ 5; Compl., Ex. 3, Funding Agreement, at 1. Plaintiffs allege that Defendants (although it is unclear which

Defendant) breached the Funding Agreement by failing to honor certain contractual governance provisions. Compl. ¶ 13(i).

### C. The Services Agreement

The creation of the PLC program involved an additional undated agreement, the Services Agreement, which specified that Karum would provide all services to KCS for operation of the program. *Id.* ¶ 9. KCS itself possessed none of the infrastructure to service the program. *Id.*

The Complaint does not specify which Karum entity would provide these services to KCS, but the attached contract indicates that Karum LA was the sole other signatory. *Id.*; Compl., Ex. 2, Services Agreement, at 1.[3] Both signatories, KCS and Karum LA, are Plaintiffs in the present action. Unlike with the other two contracts, no specific breaches of the Services Agreement are alleged in the Complaint.

As an additional note, Karum LA was a party only to the Services Agreement and is a subsidiary of Karum Group. Compl. ¶ 1. Beyond this introduction, Karum LA is never mentioned again in the Complaint, except by way of its inclusion in the collective "Karum." Plaintiffs do not elaborate on Karum LA's involvement in the transactions and activities discussed in the Complaint.

### II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[3] Plaintiffs ask the Court to disregard the signatories of the agreements and instead accept their allegations that the writings "collectively comprise the agreement of the parties." Pl.'s Mem. Opp'n 3. That argument is addressed below.

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081.

### III. Analysis

#### A. Breach of the Services Agreement

Defendants argue that any claims predicated on the Services Agreement must be dismissed because neither Defendant is a party to the agreement. In support, they point to the agreement itself, which is attached to the Complaint. *See 188 LLC,* 300 F.3d at 735 *(*a written instrument attached as an exhibit to a complaint is part of the pleadings).

In response, Plaintiffs acknowledge that Defendants are not expressly made parties to the Services Agreement, but argue that the Court should not consider this as dispositive, because the Complaint alleges that "the documents collectively make up the agreement." Compl. ¶ 5. Plaintiffs argue that these "allegations trump exhibits." Pl.'s Mem. Opp'n 5. However, aside from this conclusory statement, nothing in the Complaint or attached exhibits plausibly allege that the three contracts were intended to form a master agreement wherein the breach of one contract would constitute the breach of the other. *Id.* ¶ 5. And merely conclusory allegations to this effect without more do not satisfy the pleading standard. *See Iqbal*, 556 U.S. at 678.

5

What is more, a closer reading of the contracts suggests a different conclusion. For example, both the Program Agreement and Funding Agreement—the agreements to which Lowe's is a party—contain integration clauses, providing that they each "constitute the entire agreement" and "supersede[] all prior agreements and/or understandings . . . concerning matters addressed herein." *See* Compl, Ex. 1, Program Agreement § 12.10; *see also* Compl., Ex. 3, Funding Agreement § 13.12. And there is no language in any of the agreements (nor any factual allegations in the Complaint) that would support the assertion that they all were part of single larger "Agreement."[4]

Plaintiffs additionally contend that Lowe's is party to the Services Agreement in "substance" because it provides 99% of KCS's funding and receives 99% of KCS's profits by the terms of the Funding Agreement. Pl.'s Mem. Opp'n 4; *see also* Compl. ¶ 11.[5] But this argument also is unpersuasive. On the one hand, Plaintiffs allege that Lowe's funded KCS in part and that KCS "was designed to be a joint venture" between Karum and Lowe's. Compl. ¶ 7. However, Plaintiffs do not allege that Lowe's controlled the operations of KCS in whole or in part. Nor does Plaintiffs allege that KCS was an alter-ego of Lowe's. To the contrary, the Complaint asserts

---

[4] A complaint may contradict the apparent meaning of an attached written instrument in certain circumstances, but Plaintiffs have pleaded no facts to suggest that such circumstances exist here. *See, e.g., Bogie v. Rosenburg,* 705 F.3d 603, 609 (7th Cir. 2013) (noting that allegations of fraud or coercion would trigger an exception).

[5] To support this emphasis on substance, Plaintiffs rely on out-of-circuit precedent interpreting the Truth in Lending Act to require "substance-over-form" analysis in line with other consumer protection statutes. *Edwards v. Your Credit Inc.*, 148 F.3d 427, 436 (5th Cir. 1998). The Services Agreement, however, is governed by New York law and does not involve the Truth in Lending Act. Compl., Exh. 2, Services Agreement § 17.

that KCS was established by and is a subsidiary of Karum Group. *See id.* ¶¶ 1, 13. And KCS is included as a plaintiff in this action that is suing Lowe's. These are hardly the acts of an alter-ego.

Thus, the allegations in the Complaint simply do not support Plaintiffs' argument that Lowe's was a party to the Services Agreement, explicitly or otherwise. Under New York law, which the parties agree controls, an individual or entity that is not a party to a contract cannot be held liable for a breach of that contract, and Plaintiffs' claim against Lowe's for breaching the Services Agreement is dismissed. *See Travelers Cas. & Sur. Co. v. Dormitory Auth.-N.Y.*, 735 F. Supp. 2d 42, 80 (S.D.N.Y. 2010) (citing *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007)); *see also Black Car & Livery Ins., Inc. v. H&W Brokerage, Inc.*, 813 N.Y.S.2d 751, 751 (N.Y. App. Div. 2006).

Plaintiffs' attempt to hold Lowe's liable for breaching the Services Agreement fails for the additional reason that the allegations in the Complaint are too vague to properly plead a breach of contract claim. Here, although Plaintiffs point to specific provisions of the Program Agreement and Funding Agreement that were allegedly breached by Defendants, they do not cite to any particular provision of the Services Agreement or even claim that the Services Agreement was breached in any way. *Cf.* Compl. ¶¶ 13, 25, 26. Other counts in the Complaint only allege breaches of the agreements collectively or behavior on the part of Lowe's that is not tied to the Services Agreement in particular. *See id.* at ¶¶ 13(a)–(g), 14, 15, 16, 20, 23, 24 27–28, 30–31. As such, the allegations fail to meet the Rule 8(a)(2) threshold of

7

"put[ting] the defendant on notice of the plaintiff's claims." Fed. R. Civ. P. 8(a)(2); *Standard v. Nygren*, 658 F.3d 792, 799 (7th Cir. 2011). "The rules do not require unnecessary detail, but neither do they promote vagueness or reward deliberate obfuscation." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007).

Because Lowe's is not a party to the Services Agreement and because Plaintiffs have not sufficiently pleaded a breach of the Services Agreement to satisfy Rule 8, any claims against Lowe's for breach of the Services Agreement are dismissed without prejudice.

**B.     Karum LA**

Defendants also argue that Karum LA cannot remain as a plaintiff in this case because it is not a party to any of the other agreements. The elements of breach of contract under New York law are "(1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, and (4) resulting damage." *Clearmont Property, LLC v. Eisner*, 58 A.D.3d 1052, 1055 (N.Y. App. Div. 2009). The Complaint does not allege a contract was formed between Karum LA and any of the Defendants. Indeed, Karum LA is never mentioned in the Complaint other than being introduced as a party in this case. *See generally* Compl. Accordingly, any claims asserted on behalf of Karum LA are dismissed without prejudice.

C.  **Basis for Jurisdiction**

Pursuant to Rule 8(a)(1), Plaintiffs must state the basis for the Court's jurisdiction over their claim. Fed. R. Civ. P. 8(a)(1); *see also Hemmings v. Barian*, 822 F.2d 688, 693 (7th Cir. 1987). Plaintiffs invoke this Court's diversity jurisdiction. *See* Compl. ¶ 3 (invoking 28 U.S.C. § 1332(a)(3)). Section 1332(a)(3) grants jurisdiction for civil actions between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332. While the specific citizenships of foreign parties bears no weight on the 1332(a)(3) analysis, diversity can only be maintained if "citizens of states are on both sides of the litigation" and if these state citizens "are completely diverse." *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 428 (7th Cir. 1993).

Two of the Plaintiffs, Karum Holdings and Karum Group, are limited liability companies organized under the laws of Delaware. Compl. ¶ 1. Although the Complaint lists their citizenships based on place of incorporation and principal place of business, Delaware limited liability companies bear the citizenship of each of their members for diversity purposes. *Wise v. Wachovia Securities*, 450 F.3d 265, 267 (7th Cir. 2006). Further, the citizenship of such organizations "must be traced through however many layers of partners or members there may be." *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002).

Accordingly, the Court directs Plaintiffs to submit a jurisdictional statement within fourteen days of this Order setting forth the complete citizenship of Karum

Holdings and Karum Group for the purposes of invoking the Court's diversity jurisdiction. *See* N.D. Ill. L.R. 3.2(B).

## IV. Conclusion

For the reasons provided herein, the Court grants Defendants' motion to dismiss [9]. Plaintiff Karum LA and all claims alleging breaches of the Services Agreement are dismissed without prejudice. In the event that Plaintiffs seek to amend the Complaint in a manner consistent with this Order, a motion for leave to amend along with the proposed amended complaint should be filed within fourteen days of the entry of this Order.

**SO ORDERED**  ENTER: 7/8/15

*[signature: John Z. Lee]*

**JOHN Z. LEE**
**United States District Judge**