IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARUM HOLDINGS LLC, | ) | |
| KARUM GROUP LLC, and | ) | |
| KARUM CARD SERVICES | ) | |
| S.A. DE C.V., SOFOM, E.N.R., | ) | |
| | ) | |
| Plaintiffs, | ) | 15 C 380 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| LOWE'S COMPANIES, INC., and | ) | |
| LOWE'S COMPANIES MEXICO, | ) | |
| S. DE R.L. DE C.V., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Lowe's Companies, Inc. ("Lowe's Inc.") is a corporation that operates home improvement stores in North America. Around 2007, Lowe's Inc. announced plans to expand into Mexico. It also decided to create a Private Label Credit Program through which consumers could obtain private label credit cards usable only at its Mexico locations. To that end, Lowe's Companies Mexico, S. de R.L. de C.V. ("Lowe's Mexico") entered into two agreements with Karum Holdings LLC ("Karum Holdings"), Karum Group LLC ("Karum Group"), and Karum Card Services S.A. de C.V., SOFOM, E.N.R. ("KCS") for the provision of private label credit services.

In 2015, Karum Holdings, Karum Group, and KCS ("Plaintiffs") sued Lowe's Inc. and Lowe's Mexico ("Defendants") for breaching the parties' agreements. Defendants have filed a motion for partial summary judgment. For the reasons stated herein, their motion is granted in part and denied in part.

## Background[1]

Karum Holdings and Karum Group are Delaware limited liability companies. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 1–2, ECF No. 87. Their principal places of business are in California, and their members reside in California and Texas. *Id.*; Am. Compl. ¶¶ 1–5, ECF No. 50. KCS is a subsidiary of Karum Group. Defs.' LR 56.1(a)(3) Stmt. ¶ 3. It is a special-purpose bank organized under the laws of Mexico, and it is a citizen of Mexico. *Id.* Lowe's Inc. is incorporated in North Carolina and has its principal place of business in North Carolina. *Id.* ¶ 4. Lowe's Mexico is a corporation organized under the laws of Mexico. *Id.* ¶ 5. It operates stores in Mexico and is a citizen of Mexico. *Id.*[2]

On February 10, 2010, Lowe's Mexico entered into a Private Label Credit Card Program Agreement ("the Program Agreement") with Karum Holdings and KCS for the provision of private label credit cards for Lowe's Mexico's customers. *Id.* ¶ 9; *id.*, Ex. 1 ("Program Agreement"), at 1. On April 4, 2014, Lowe's Mexico also entered into a Profit Sharing and Funding Agreement ("the Funding Agreement") with Karum Group, Karum Holdings, and KCS, which governed funding and profit percentages with respect to KCS's operations. *See id.* ¶ 11; *id.*, Ex. 2 ("Funding

---

[1] Except where otherwise noted, the following facts are not in material dispute.

[2] The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000 and because this is an action between "citizens of different states and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). The fact that the additional parties on each side of the litigation—that is, KCS and Lowe's Mexico—are both citizens of Mexico does not destroy diversity of citizenship. *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 245–46 (7th Cir. 2003) (holding that diversity jurisdiction obtains under § 1332(a)(3) even where the foreign citizens on each side of the litigation are from the same country).

Agreement"), at 2. Plaintiffs assert that Lowe's Inc. acted as the alter ego of Lowe's Mexico for purposes of both the Program Agreement and the Funding Agreement (together, "the Agreements"). Am. Compl. ¶ 13.

On August 21, 2014, Lowe's Inc.'s Senior Vice-President of International Operations, Doug Robinson, spoke on the phone with Plaintiffs' CEO, Peter Johnson. Defs.' LR 56.1(a)(3) Stmt. ¶ 13. The parties dispute what Robinson said to Johnson during this phone call. According to Defendants, Robinson merely told Johnson that Defendants "desire[d] to end [their] relationship" with Plaintiffs. *Id.* But according to Plaintiffs, Robinson told Johnson more definitively that Defendants "had determined to terminate the Agreements." Pls.' LR 56.1(b)(3) Stmt. ¶ 13.

On October 2, 2014, Plaintiffs served Defendants with a demand for mediation, as required under both Agreements as a condition precedent to litigation. Defs.' LR 56.1(a)(3) Stmt. ¶ 19. The mediation was conducted on December 10, 2014, but it was unsuccessful. *Id.* ¶ 20. Accordingly, Plaintiffs filed this lawsuit in January 2015, alleging breach of the Agreements. In particular, they claim that Defendants breached the Agreements by (1) terminating the Agreements, (2) awarding contracts to third parties for services related to the Agreements, (3) refusing to work cooperatively with Plaintiffs on day-to-day business issues, and (4) refusing to cure deficiencies in the performance of their duties under the Agreements. Am. Compl. ¶¶ 32–36. Defendants have moved for partial summary judgment as to these claims.

3

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

**I.    Anticipatory Repudiation**

First, Defendants move for summary judgment on Plaintiffs' breach of contract claims to the extent they rest on allegations that Defendants prematurely terminated the Agreements. According to Defendants, even assuming as true that Robinson attempted to orally terminate the Agreements in his phone call with Johnson on August 21, 2014, his attempted termination cannot form the basis of Plaintiffs' breach of contract claim as a matter of law, because the Agreements'

4

express terms required any notice of termination to be in writing. Defs.' Mem. Supp. at 7–10, ECF No. 88. In response, Plaintiffs argue that Robinson's statement to Johnson gave rise to a breach because it was an anticipatory repudiation. Pls.' Mem. Opp. at 8–9, ECF No. 99.

Under New York law,[3] an anticipatory repudiation occurs when a party declares a positive, unequivocal intention not to fulfill a contractual duty before the time for performance begins. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 112 (2d Cir. 2010); *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). A party can repudiate a contract either in a statement, written or oral, or through its conduct. *See, e.g.*, *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 705 N.E.2d 656, 659 (N.Y. 1998) (holding that repudiation may occur through a statement or conduct); *Tenavision, Inc. v. Neuman*, 379 N.E.2d 1166, 1168 (N.Y. 1978) (holding that oral statements along with one piece of related correspondence were sufficient evidence of an anticipatory repudiation); *see also DiFolco*, 622 F.3d at 112. Whether a party's statement or conduct constitutes an anticipatory repudiation is generally a question for the trier of fact. *DiFolco*, 622 F.3d at 112 (citing *Bercow v. Damus*, 5 A.D.3d 711, 712 (N.Y. App. Div. 2004)).

When one party anticipatorily repudiates a contract, the non-repudiating party must choose one of two mutually exclusive options: (1) "treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby

---

[3] The parties agree that New York law governs this dispute pursuant to choice-of-law provisions set forth in the Agreements. *See* Defs.' Mem. Supp. at 8 (citing Program Agreement § 12.18; Funding Agreement § 13.20).

5

terminating the contractual relation," or (2) "continue to treat the contract as valid and await the designated time for performance before bringing suit." *Lucente*, 310 F.3d at 258. "The non-repudiating party may refuse, for a time, to acquiesce in the repudiation, and, without waiving any rights, urge the repudiator to perform." *Vision Entm't Worldwide, LLC v. Mary Jane Prods., Inc.*, No. 13 CIV 4215 AT, 2014 WL 5369776, at *5 (S.D.N.Y. Oct. 17, 2014) (citing *S.D. Hicks & Son Co. v. J.T. Baker Chem. Co.*, 307 F.2d 750, 752 (2d Cir. 1962)). In addition, "[t]he repudiator may retract his repudiation until the other party has elected to terminate the contract or has materially changed his position in reliance on the repudiation." *Id.* (quoting *In re Randall's Island Family Golf Centers, Inc.*, 261 B.R. 96, 102 (Bankr. S.D.N.Y. 2001)).

As a threshold matter, the Court notes that much of the parties' briefing has centered not on the issue of anticipatory repudiation, but instead on Defendants' argument that Robinson's oral statement was insufficient to terminate the Agreements, which required written notice of termination. Defendants' argument misses the mark. Although a proper termination would have indeed required written notice, Plaintiffs' theory is not that Defendants attempted but failed to properly terminate the Agreements. Instead, Plaintiffs argue that Robinson's statement was "an outright repudiation of the Agreements." Pls.' Mem. Opp. at 9. As noted above, a repudiation can be expressed by any kind of statement, written or oral, and can even be implied by mere conduct. *See Norcon*, 705 N.E.2d at 659; *Tenavision*, 379 N.E.2d at 1168; *DiFolco*, 622 F.3d at 112. Thus, it is immaterial to

6

Plaintiffs' anticipatory repudiation theory that Robinson's statement was not in writing. It would be odd indeed to require a party claiming that the other party repudiated its obligation under an agreement to prove that the same party *complied* with the terms of the agreement before doing so.

Turning to the merits of Plaintiffs' anticipatory repudiation theory, the Court finds that several issues of fact preclude summary in Defendants' favor. First, there is a genuine dispute of material fact as to what Robinson actually said on August 21, 2014, during his phone call with Robinson. Defendants claim that Robinson said they "desire[d] to end [their] relationship" with Plaintiffs, whereas Plaintiffs claim that Robinson said Defendants "had determined to terminate the Agreements." Defs.' LR 56.1(a)(3) Stmt. ¶ 13; Pls.' LR 56.1(b)(3) Stmt. ¶ 13. What Robinson said during the phone call is thus an issue that must be decided by the jury. In addition, the jury must determine whether Robinson's statement, whatever it entailed, expressed an intent not to fulfill a contractual duty so as to constitute an anticipatory repudiation. *DiFolco*, 622 F.3d at 112.

Furthermore, assuming that Robinson's statement was an anticipatory repudiation, the evidence in the record raises a genuine issue as to whether Plaintiffs elected to treat the repudiation as a breach, rather than continuing to treat the Agreements as valid as Defendants claim. In particular, the record shows that Plaintiffs served Defendants with a demand for mediation on October 2, 2014, and filed this lawsuit soon after the mediation proved unsuccessful. Defs.' LR

7

56.1(a)(3) Stmt. ¶¶ 19–21. A jury could find from these facts that Plaintiffs indeed treated the repudiation as a breach and timely sued for damages.

In their reply brief, Defendants deny that Plaintiffs treated the repudiation as a breach, asserting instead that Plaintiffs "continued to operate as if the Agreements remained valid." Reply at 6, ECF No. 104. But they support this assertion only by citing a portion of the original complaint, which sought a declaration excusing Plaintiffs "from further performance of [their] own obligation under the Agreements." *Id.* (citing Compl. ¶ 30, ECF No. 1). According to Defendants, this passage from the complaint "clearly indicate[s] [Plaintiffs'] view that the Agreements remained valid and effective as of the January 2015 filing date." *Id.* The Court disagrees that such an indication is clear from the complaint. Plaintiffs may have sought a declaratory judgment simply because they wanted to put to rest any uncertainty between the parties about whether any contractual obligations remained. As such, contrary to Defendants' assertion, Plaintiffs' complaint does not foreclose the possibility that Plaintiffs believed the Agreements were no longer valid at the time of filing.

Defendants also argue in their reply that, even if Robinson's statement on August 21 was an anticipatory repudiation, Defendants retracted the repudiation by notifying Plaintiffs on September 26, 2014, that they "would continue under the current agreements." *Id.* (citing Defs.' LR 56.1(a)(3) Stmt. ¶ 17). But the record does not show whether Plaintiffs elected to terminate the contract or materially

changed their position in reliance on the alleged repudiation prior to that date.[4] If Plaintiffs did so, then Defendants' attempt to retract the repudiation was ineffective. *See Vision Entm't*, 2014 WL 5369776, at *5 (citing *In re Randall's Island*, 261 B.R. at 102). Thus, whether Defendants' actions on September 26, 2014, were an effective retraction of a prior repudiation is a question involving factual issues that the Court cannot resolve on the current record.

In sum, several disputed issues of material fact remain with regard to Plaintiffs' anticipatory repudiation theory in connection with Robinson's statement during the August 21 phone call. As such, to the extent that Plaintiffs' breach of contract claim is based on this statement, Defendants are not entitled to summary judgment in their favor.

## II. Damages

Next, Defendants have moved for summary judgment on what they term the "services component" of Plaintiffs' damages model. In particular, Defendants contend that Plaintiffs' computation of damages impermissibly "seek[s] to recover services fees and profit sharing contributions paid by KCS to Karum LA and Karum

---

[4] Presumably, Plaintiffs plan to offer evidence at trial indicating that they either elected to terminate the contract or materially changed their position before this date. They cannot be faulted for failing to point to such evidence at the summary judgment stage, given that Defendants' argument that they had retracted any prior repudiation surfaced for the first time in their reply.

9

Capital LLC"—neither of which is a party to the Program Agreement or Funding Agreement (or to this litigation). Defs.' LR 56.1(a)(3) Stmt. ¶¶ 25–26; *id.*, Ex. 14.[5]

Under New York law, "[d]amages for breach of contract include general (or direct) damages, which compensate for the value of the promised performance, and consequential damages, which are indirect and compensate for additional losses incurred as a result of the breach." *Latham Land I, LLC v. TGI Friday's, Inc.*, 96 A.D.3d 1327, 1330–31 (N.Y. App. 2012); *accord Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 239 (S.D.N.Y. 2011). "These two classes of damages are awarded in the amount necessary to put the aggrieved party in as good a position as it would have been had the contract been fully performed." *Versatile Housewares*, 819 F. Supp. 2d at 239 (internal quotation marks omitted). They thus serve the principal goal of contract damages, which is "to place [the] plaintiff in the position [it] would have been in absent the breach, no worse but no better." *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 230 A.D.2d 228, 230 (N.Y. App. Div. 1997) (internal quotation marks omitted).

---

[5] In challenging this component of Plaintiffs' computation of damages, Defendants mention in passing, with no citation to any authority, that "the Agreements provide that KCS is the only Karum entity with the ability to enforce them." Defs.' Mem. Supp. at 11, 14. Then, presumably on this basis, a sentence repeated in the brief's introduction and conclusion asks the Court to "grant summary judgment in [Defendants'] favor" on "all claims brought on behalf of Karum Holdings and Karum Group." *Id.* at 2, 15. Because this argument is insufficiently developed and is unsupported by citation to authority, the Court does not consider it further. *See, e.g., United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010) (declining to consider argument presented in only a single paragraph and unsupported by authority). Thus, to the extent Defendants seek summary judgment on "all claims brought on behalf of Karum Holdings and Karum Group," *see* Defs.' Mem. Supp. at 2, 15, their motion for partial summary judgment is denied.

Plaintiffs argue that they have incurred a loss in the amount of service fees that they were contractually obligated to pay to third parties (namely, to Karum LA and Karum Capital LLC) but were unable to pay as a result of Defendants' breach. *See* Pls.' Mem. Opp. at 14–15; Pls.' LR 56.1(b)(3) Stmt. ¶ 26. This argument, however, is irreconcilable with the law of contract damages. To the extent Plaintiffs were contractually obligated to pay these fees to third parties, there is no indication that Plaintiffs would *not* have been obligated to pay the fees if Defendants had fully performed their end of the Agreements. In other words, Plaintiffs' obligation to pay these fees is not an "additional loss[ ] incurred *as a result* of the breach." *Latham*, 96 A.D.3d at 1331 (emphasis added).[6] Compensating Plaintiffs for the amount of the services fees would thus put them in a better position than if the contract had been performed, given that they would have had to pay the fees even absent the breach.

For these reasons, the service fees may not be included in Plaintiffs' computation of damages. Accordingly, to the extent Defendants seek summary judgment as to the "services component" of Plaintiffs' damages model, their motion is granted.

---

[6] Karum summarizes its theory in this way: "Rather KCS seeks that amount, because it is contractually obligated to pay it, but is unable to do so because Lowe's has breached the Funding Agreement by not providing the funding KCS needs and has breached the Program Agreement by prematurely terminating it, and thus extinguishing the need for Karum Capital and Karum LA's services through the terms of KCS's agreements with Karum Capital and Karum LA." Pls.' Mem. Opp. at 14. This is a circumlocutory way of saying that KCS no longer needs Karum Capital's and Karum LA's services because of Defendants' alleged breach. If this is so, KCS had no obligation to pay those entities for services that are no longer needed and thus did not suffer any damages as a result.

## Conclusion

For the reasons stated herein, Defendants' motion for partial summary judgment [80] is granted in part and denied in part. To the extent Defendants have moved to bar Plaintiffs from seeking damages for the "services component" of their damages model—that is, the amount of services fees and profit sharing contributions that Plaintiffs owed to third parties—the motion is granted. In all other respects, the motion is denied. A status hearing is set for 9:00 a.m. on April 12, 2017, at which time the parties should be prepared to set deadlines for pretrial filings, a date for the pretrial conference, and a date for trial.

**IT IS SO ORDERED.**          ENTERED   3/28/17

_____
**John Z. Lee**
**United States District Judge**