# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KARUM HOLDINGS LLC, <br> KARUM GROUP LLC, and <br> KARUM CARD SERVICES <br> S.A. DE C.V., SOFOM, E.N.R., | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) | 15 C 380 |
| v. | ) <br> ) | Judge John Z. Lee |
| LOWE'S COMPANIES, INC., and <br> LOWE'S COMPANIES MEXICO, <br> S. DE R.L. DE C.V., | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Lowe's Companies, Inc. ("Lowe's Inc.") is a corporation that operates home improvement stores in North America. Around 2007, Lowe's Inc. decided to create a program to provide private label credit cards to customers of Lowe's Mexico. To that end, Lowe's Companies Mexico, S. de R.L. de C.V. ("Lowe's Mexico") entered into two agreements with Karum Holdings LLC ("Karum Holdings"), Karum Group LLC ("Karum Group"), and Karum Card Services S.A. de C.V., SOFOM, E.N.R. ("KCS") to implement the private label credit card program. In 2015, Karum Holdings, Karum Group, and KCS (collectively "Karum") commenced this lawsuit against Lowe's Inc. and Lowe's Mexico (collectively "Lowe's") for purportedly breaching the parties' agreements.

In anticipation of trial scheduled for December 11, 2017, Karum filed a motion *in limine* [157] to exclude Lowe's affirmative defense of setoff that Lowe's

1

had asserted with its answer and to preclude the introduction of evidence supporting that defense at trial.  Among other things, Lowe's contends that Karum has defaulted recently on several promissory notes related to the agreements at issue here and that Lowe's is entitled to receive damages as a result.  And so, in October 2017, Lowe's filed a motion [207] requesting leave under Fed. R. Civ. P. 8(c)(2) to convert to a counterclaim the portion of its setoff affirmative defense related to these alleged defaults.  In the alternative, Lowe's seeks leave to bring this claim as a new counterclaim under Rule 13(e).

For the reasons stated below, the Court finds that Lowe's claims and purported affirmative defense of setoff are not appropriately brought in this action, and therefore Karum's motion [157] is granted, while Lowe's motion [207] is denied.

## **Background**

In February 2010, Lowe's Mexico entered into a Private Label Credit Card Program Agreement ("Program Agreement") with Karum Holdings and KCS for the provision of private label credit cards for Lowe's Mexico's customers.  Am. Compl. ¶ 9, ECF No. 50; *id.*, Ex. 1, Program Agreement at 1.  In April 2014, Lowe's Mexico then entered into a Profit Sharing and Funding Agreement ("Funding Agreement") with Karum Group, Karum Holdings, and KCS, which governed funding and profit percentages with respect to KCS's operations.  *See id.* ¶ 11; *id.*, Ex. 2, Funding Agreement at 2.  Karum asserts that Lowe's Inc. acted as the alter ego of Lowe's Mexico for purposes of both the Program Agreement and the Funding Agreement (together, "the Agreements").  Am. Compl. ¶ 13.

In August 2014, Lowe's Inc.'s Senior Vice-President of International Operations, Doug Robinson, spoke on the phone with Karum's Chairman and CEO, Peter Johnson. Defs.' LR 56.1(a)(3) Stmt. ¶ 13, ECF No. 87. The parties dispute what Robinson said to Johnson during this phone call. According to Lowe's, Robinson merely told Johnson that Defendants "desire[d] to end [their] relationship" with Plaintiffs. *Id.* But according to Karum, Robinson told Johnson more definitively that Lowe's "had determined to terminate the Agreements." Pls.' LR 56.1(b)(3) Stmt. ¶ 13, ECF No. 100.

Karum filed this lawsuit in January 2015, alleging breach of the Agreements. In particular, Karum claims that Lowe's breached the Agreements by (1) terminating the Agreements, (2) awarding contracts to third parties for services related to the Agreements, (3) refusing to work cooperatively with Plaintiffs on day-to-day business issues, and (4) refusing to cure deficiencies in the performance of their duties under the Agreements. Am. Compl. ¶¶ 32–36.

Lowe's filed its answer to Lowe's amended complaint in August 2015. As relevant here, Lowe's asserted in its answer an affirmative defense that Lowe's denominated "Setoff." Am. Answer at 19, ECF No. 54.

> Lowe's is entitled to a setoff against any relief sought by Karum based upon monies Lowe's provided to Karum and/or monies that Karum owes Lowe's. Lowe's provided the funding to KCS to provide the various credit services under the Program Agreement and Funding Agreement. Lowe's provided that funding in the form of debt, including promissory notes executed by KCS and Karum Group. There remains an outstanding balance owed to Lowe's (the exact amount to be proven at trial), and these payments and loans made to Karum should be set off from any damages that Karum might obtain.

3

*Id.*

During discovery, Karum served an interrogatory requesting, *inter alia*, a description of any damages Lowe's sought from Karum as part of its setoff affirmative defense. In June 2016, Lowe's disclosed that it would seek the following "monies loaned or otherwise paid to Karum during the course of the parties' relationship." Defs.' Objections & Supplemental Resp. Pls.' Interrogatory Nos. 2 & 4 ("Second Response Interrogatory No. 2") at 9, ECF No. 158-5; Defs.' Objections & Third Supplemental Resp. Pls.' Interrogatory No. 2 ("Third Response Interrogatory No. 2") at 9, ECF No. 158-6.

- MXN[1] $96,492,760.97, plus interest, in debt funding and promissory notes provided to Karum by Lowe's under the Funding Agreements;

- USD $280,000, plus interest, in two promissory notes provided to Karum by Lowe's in 2010 and 2013, collectively;

- MXN $8,982,048, plus interest, in RAY[2] true-up monies provided to Karum by Lowe's after May 28, 2015, which cannot be attributed to the use of Lowe's requested promotional programs pursuant to Section 5.2 of the Funding Agreement; and

- MXN $17,970,921, plus interest, in RAY true-up monies provided to Karum by Lowe's for alleged bad debt reserves, which cannot be attributed to the use of Lowe's requested promotional programs pursuant to Section 5.2 of the Funding Agreement.

*Id.* Lowe's also stated that, to account for interest, it would provide a final tally of damages at trial. *Id.*

---

[1] "MXN" signifies "Mexican pesos," and "USD" signifies "U.S. dollars."

[2] "RAY" is an acronym for "risk adjusted yield."

The MXN-denominated debt funding and promissory notes were executed between 2014 to 2015, after the parties had signed the Funding Agreement ("2014–2015 notes"). Defs.' Mem. at 2, ECF No. 209; Pls.' Mem. at 7. Absent default, these notes were scheduled to mature in 2019 and 2020. Pls.' Mem. at 2, ECF No. 157; Default Letter at 1–2; ECF No. 158; *see generally* 2014–2015 Promissory Notes, ECF No. 158-7. The 2010 USD-denominated note in the amount of $200,000 ("2010 note") was to "automatically mature" on "the later of the 61st day after the execution hereof or the date on which [Lowe's Mexico and KCS] execute the Profit Sharing and Funding Agreement," while the 2013 note for $180,000 ("2013 note") appears to have a maturity date sometime after December 2018 (although the exact date is unclear from the record). *See* 2010 & 2013 Promissory Notes at 8, ECF No. 158-8.

On August 30, 2017, Lowe's sent a letter notifying Karum that Lowe's believed that Karum had defaulted on the 2014–2015 notes and the 2013 note, pursuant to Section 4(i) of the notes. *See* Default Letter at 1–2; 2010 & 2013 Promissory Notes at 9; *see generally* 2014–2015 Promissory Notes. This provision permitted Lowe's to declare a default based on "[a] material adverse change . . . in Borrower's financial condition, or [if Lowe's] believes the prospect of payment or performance of this Promissory Note is impaired." *Id.* Upon default, Lowe's was entitled to "declare the entire unpaid principal balance under this Promissory Note and all accrued interest immediately due, and then Borrower will pay that amount." *Id.* The default letter also notified Karum that the 2010 note had matured in the ordinary course and was immediately due and payable. Default Letter at 1. The

5

letter did not specify when the note had matured. In total, Lowe's demanded immediate payment of USD $6,281,175. *Id.*

Karum has filed a motion *in limine* to exclude Lowe's setoff affirmative defense and any evidence that Lowe's intends to offer to support it. For its part, Lowe's has filed a motion to convert the portion of its setoff affirmative defense related to the 2014–2015 notes into a counterclaim under Rule 8(c)(2) or, in the alternative, for leave, pursuant to Rule 13(e), to assert a new counterclaim with respect to these notes.

## **Legal Standard**

In breach-of-contract cases, where a party seeks to assert a "setoff" or "recoupment" that, if successful, will alter the net amount it owes to the opposing party, the party must bring a counterclaim pursuant to Federal Rule of Civil Procedure 13, rather than assert an affirmative defense.[3] *See Coplay Cement Co. v. Willis & Paul Grp.,* 983 F.2d 1435, 1440–41 (7th Cir. 1993) (explaining that common-law setoff and recoupment have been supplanted by the counterclaim and "survive[ ] as a distinctive doctrine . . . only in banking and in bankruptcy"); *Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 610 (7th Cir. 1993) ("[a] setoff is for most purposes just a permissive counterclaim"); *Valley Disposal Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 364 (2d Cir. 1997) ("Under the Federal Rules of Civil Procedure, a defendant's claim of setoff against a plaintiff is to be

---

[3] At common law, if such a counterclaim was compulsory, it was known as "recoupment," while if it was permissive, it was known as "setoff." *Coplay*, 983 F.2d at 1440.

6

made by means of counterclaim in its answer to the complaint."). Such a claim for setoff or recoupment "is not an affirmative defense because it does not destroy the plaintiff's right of action." *Ace Hardware Corp. v. Marn, Inc.*, 2008 WL 4286975, at *8 (N.D. Ill. Sep. 16, 2008); *see Tharp v. Catron Interior Sys., Inc.*, 2016 WL 7210940, at *3 (S.D. Ind. Dec. 12, 2016) ("[This] claim for a setoff is not an affirmative defense that can destroy the Plaintiffs' right of action; rather, it may reduce the amount of . . . liability to the Plaintiffs . . . . Therefore, . . . [it] is properly characterized as a permissive counterclaim.").

Pursuant to Rule 8(c)(2), "[if] a party mistakenly designates a . . . counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." *Reiter v. Cooper,* 507 U.S. 258, 263 (1993) (quoting Fed. R. Civ. P. 8(c)). Some courts have held that the rule—at least in the early stages of litigation—"generally favors defendants because courts will construe responsive pleadings liberally to maximize the defendant's available legal theories." *AEL Fin., LLC v. Burns*, 2010 WL 4313988, at *2 (N.D. Ill. Oct. 19, 2010) (citing *Caldera v. Northrop Worldwide Aircraft Servs.,* 192 F.3d 962, 970 (Fed. Cir. 1999)).

Where, however, a party does not merely mistakenly *designate* a counterclaim as an affirmative defense, but also fails to provide notice of the basis of the counterclaim in the body of the affirmative defense, the proper course is to decline to convert the defense into a counterclaim and to consider, instead, whether leave should be granted to add a new counterclaim. *See Gallagher's NYC*

7

*Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.,* 2011 WL 6034481, at *9 (S.D.N.Y. Dec. 5, 2011) (declining to convert a setoff affirmative defense into a counterclaim and declining to add a new counterclaim where "the affirmative defense fail[ed] to set forth any facts that resemble in any way the proposed counterclaims" and accordingly "fail[ed] to provide Plaintiff with any notice of the proposed counterclaims, making Rule 8(c)(2) inapplicable"); *Rocheux Int'l of N.J., Inc. v. U.S. Merchs. Fin. Grp, Inc.,* 741 F. Supp. 2d 651, 660 (D.N.J. 2010) ("The question before the Court, then, is whether Defendants' proposed modification redresses a simple mistaken designation, for which Rule 8(c)(2) provides the appropriate standard for relief, or whether Defendants' modification presents a new claim . . . .").

Although, as a general matter, leave to amend pleadings, including the additional of new counterclaim, should be granted freely, it may be denied for, *inter alia*, undue delay on the part of the proponent or prejudice to the opposing party by virtue of allowance of the amendment. *See Dubicz v. Commonwealth Edison Co.,* 377 F.3d 787, 792 (7th Cir. 2004).

## Analysis

### I. The 2014–2015 Notes

Lowe's argues that its setoff affirmative defense as to the 2014–2015 notes should be converted into a counterclaim, because the claim ripened into a claim only when Karum defaulted on the notes in August 2017. Defs.' Mem. at 9. In response, Karum apparently understands Lowe's motion as seeking only to add a new

counterclaim, rather than attempting to retroactively *convert* part of Lowe's setoff affirmative defense into a counterclaim and argues that Lowe's has waived its ability to add a new counterclaim because it was required to bring it as a compulsory counterclaim in 2015. Pls.' Resp. at 8, ECF No. 217. Karum also contends that, if the Court finds that the counterclaim is permissive, Karum would be severely prejudiced if Lowe's were granted leave to add the counterclaim now, years into the litigation, after discovery has ended, and only weeks before trial. *Id*. at 9–10.

First, Lowe's cannot rely upon Rule 8(c)(2) because, whatever claim it may have now with respect to the 2014–2015 notes, the setoff affirmative defense that it asserted in its 2015 answer did not provide Karum with sufficient notice of the basis for this claim. After all, the affirmative defense was asserted in August 2015, while the claim in question did not materialize until August 2017. *See, e.g., Gallagher's*, 2011 WL 6034481, at *9.

This is no mere technicality, given that the facts underlying Lowe's claim with respect to the 2014–2015 notes appear to differ significantly from those that form the basis of Karum's original claims. Therefore, while justice may require courts to construe incorrectly-pleaded affirmative defenses as counterclaims during the early part of a case, *see, e.g., AEL Fin.*, 2010 WL 4313988, at *2, justice requires the opposite here, where fact and expert discovery closed months ago and trial is but weeks away. Karum's motion *in limine* is therefore granted with respect to the

2014–2015 notes, and Lowe's motion to convert this portion of its affirmative defense into a counterclaim is denied.

For the same reasons, the Court finds that Lowe's counterclaim is permissive, rather than compulsory. Karum argues that, because the facts upon which Lowe's based its 2017 declaration of default existed at the time Karum filed this lawsuit, Lowe's had the same "right" to declare a default in 2015 and, thus, was required to bring the claim as a compulsory counterclaim at that time. Pls.' Resp. at 1–2, 4–6, 8, 13. But, it is evident from Lowe's August 2017 letter that the purported default took place well after the events giving rise to Karum's claims. Thus, Lowe's counterclaim is permissive, not compulsory. *See, e.g., Oak Park Trust and Sav. Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cir. 2000) (stating that, according to Rule 13, a permissive counterclaim arises from events other than those leading to a plaintiff's claims).

Finally, Lowe's request for leave to assert a new counterclaim is denied. It is apparent from the briefs that the parties have significant disagreements with regard to the scope and viability of this claim, requiring additional discovery into these matters. Accordingly, the Court finds that allowing Lowe's to add a new counterclaim at this late date would be highly prejudicial to Karum. *See, e.g., Gallagher's*, 2011 WL 6034481, at *9. Moreover, the Court declines to stay litigation of the proposed counterclaim until after the trial because, as discussed above, the counterclaim does not arise from the same operative facts as this litigation. As such, there would be no judicial efficiency in hearing Lowe's eleventh-

hour claim as part of this lawsuit, particularly where the claim is capable of being litigated in a separate lawsuit. *See In re Ameritech Corp.*, 188 F.R.D. 280, 284–85 (N.D. Ill. 1999) (denying leave to add a permissive counterclaim where, *inter alia*, the issues were new and would require reopening discovery); *Cipa Mfg. Corp. v. Allied Golf Corp.*, 1995 WL 337022, at *3 (N.D. Ill. June 1, 1994) (denying leave to file an amended affirmative defense that the court would be required to treat as a counterclaim where, *inter alia*, it would prejudice the other party, significantly delay adjudication of the other's party's claim, require extending discovery, and jeopardize the upcoming trial date).

## II. The 2013 and 2010 Notes

Lowe's does not seek leave to convert its setoff affirmative defense or add new counterclaims with regard to the 2013 or 2010 notes. Defs.' Mem. at 2, n.1; Pls.' Mem. at 1; Default Letter at 1. Lowe's instead seeks to assert the claims as part of its setoff affirmative defense. *Id.* However, as with the 2014–2015 notes, Lowe's cannot plead its claims arising from the 2013 and 2010 notes as an affirmative defense. *See Coplay*, 983 F.2d at 1440; *Ace Hardware*, 2008 WL 4286975, at *8; *Tharp*, 2016 WL 7210940, at *3. Therefore, the Court must consider whether justice requires salvaging these claims as properly pleaded counterclaims. *See Reiter,* 507 U.S. at 263.

As to the 2013 note, Lowe's informed Karum that it considered Karum be in default in the August 2017 letter. Default Letter at 1. Therefore, for the same reasons given with regard to the 2014–2015 notes, the Court finds that Lowe's

11

affirmative defense did not provide sufficient notice of this claim. Furthermore, although Lowe's has not requested that the Court convert this claim into a counterclaim or leave to assert it as a new counterclaim, because the claim would require the Court to reopen discovery, Karum would be unduly prejudiced if Lowe's were allowed to pursue this claim as a counterclaim at this late date. Karum's motion *in limine* with respect to the 2013 note is therefore granted.

The 2010 note requires more discussion. Unlike the rest of the notes at issue, Lowe's August 2017 letter did not declare an event of default with regard to the 2010 note, but merely informed Karum that the note had already matured (on some unspecified date). Default Letter at 1. Karum's motion *in limine* addresses the 2010 note in a single footnote, arguing, without citation to authority, that the 2010 note (and 2013 note) should be excluded because there are "factual disputes as to whether these debts even exist." *See* Pls.' Mem. at 7 n.1; Pls.' Reply at 7. Lowe's does not respond to this argument, nor does it address the 2010 note independently of the other notes. And, as with the 2013 note, Lowe's did not include the 2010 note in its motion to convert its setoff defense into a counterclaim, despite recognizing that it may be required to do so. *See* Defs.' Resp. at 14 n.1. Moreover, the parties have not indicated to the Court when the 2010 note was due to mature, nor is it apparent from the note itself.

In the end, the burden was on Lowe's to establish that its claim related to the 2010 note should be converted from an affirmative defense to a counterclaim under Rule 8(c)(2), or that leave should be granted to assert the claim as a new

12

counterclaim under Rule 13(e). It has done neither, and, in any event, allowing Lowe's to assert this new counterclaim would prejudice Karum for the same reasons outlined above. Accordingly, Karum's motion *in limine* to exclude Lowe's setoff affirmative defense with respect to the 2010 note is also granted.

## III. The RAY True-Ups

Lowe's also contends that it is owed damages arising from the RAY True-Up payments ("RAY payments") that it made to Karum during the course of their business relationship. However, like Lowe's other claims, because this claim would only alter the amount of monetary liability between the parties, rather than nullify Karum's claim, it is not a proper affirmative defense. *See Coplay*, 983 F.2d at 1440; *Ace Hardware*, 2008 WL 4286975, at *8; *Tharp*, 2016 WL 7210940, at *3. The question, then, is whether this claim should be converted to a counterclaim under Rule 8(c)(2) or whether Lowe's should be permitted to assert it as a new counterclaim under Rule 13(e). The answer to both questions is in the negative.

Karum argues that the RAY payments claim should be excluded because Lowe's has provided no breakdown of the amounts and no explanation as to why Karum should pay back certain amounts to Lowe's. Pls.' Mem. at 5. Lowe's responds to Karum's RAY payment arguments with little more than a single footnote. Defs.' Resp. at 13 n.2. In it, Lowe's contends that it disclosed "the nature and amount of these setoff amounts in [Lowe's] discovery responses." *Id*. If this was insufficient, Lowe's argues, Karum should have responded with a deficiency letter and could have deposed Lowe's witnesses to clear up any confusion. *Id*. And,

13

if Karum seeks more certainty, Lowe's "remains willing to meet and confer . . . to see what, if any, additional information [Lowe's] can provide." *Id*. But the fact is that Lowe's has provided no explanation in its answer or supplemental interrogatory responses as to *why* it is entitled to recovery of these payments.

In its third supplemental response to Karum's interrogatory no. 2, Lowe's stated:

> Karum's failure to meet its contractual obligations caused Lowe's to be damaged (such as damages in the form of lost profits, a diminution in the value of the portfolio of Lowe's credit receivables, and the out-of-pocket costs of transitioning to a more reliable credit service provider (including transition payments made to Karum)), but Lowe's is not seeking these damages in this lawsuit. However, Lowe's is seeking to recover the following monies loaned or otherwise paid to Karum during the course of the parties' relationship: . . .

Lowe's then went on to list the amounts it seeks to recover for the notes and RAY payments. Third Response Interrogatory No. 2 at 8–9. But this is little more than a top-line calculation of the RAY payments that Lowe's believes it is owed, and allowing this claim would necessitate reopening of discovery. Given that the 2015 affirmative defense did not sufficiently apprise Karum of this claim, and because Lowe's has not provide a sufficient explanation of the claim with only weeks remaining before trial, the Court finds that Karum would be substantially prejudiced if the Court were to convert this claim from a generic affirmative defense to a counterclaim at this time. Karum's motion *in limine* is therefore granted with respect to Lowe's RAY payments claims.[4]

---

[4] Because the factual basis for Lowe's RAY payments claim remains unclear, the Court is unable to determine whether such a counterclaim would be permissive or compulsory. It may be that the events allegedly giving rise to the RAY payment claims

## Conclusion

For the reasons stated herein, Karum's motion [157] to exclude Lowe's affirmative defense of setoff and evidence supporting that defense is granted. Lowe's' motion [207] to convert into a counterclaim a portion of its setoff affirmative defense or, in the alternative, to file a new counterclaim is denied.

**IT IS SO ORDERED.**   ENTERED   11/21/17

_____
**John Z. Lee
United States District Judge**

---

arose well after the filing of this lawsuit, or it may be that they arose out of the same transactions or occurrence that form the subject of Karum's claims. Whatever the case, this is a question for another day.