IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARUM HOLDINGS LLC, | ) | |
| KARUM GROUP LLC, and | ) | |
| KARUM CARD SERVICES | ) | |
| S.A. DE C.V., SOFOM, E.N.R., | ) | |
| | ) | |
| Plaintiffs, | ) | 15 C 380 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| LOWE'S COMPANIES, INC., and | ) | |
| LOWE'S COMPANIES MEXICO, | ) | |
| S. DE R.L. DE C.V., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Lowe's Companies, Inc. ("Lowe's Inc.") is a corporation that operates home improvement stores in North America. Around 2007, Lowe's Inc. decided to create a program to provide private label credit cards to customers of Lowe's Mexico. To that end, Lowe's Companies Mexico, S. de R.L. de C.V. ("Lowe's Mexico") entered into two agreements with Karum Holdings LLC ("Karum Holdings"), Karum Group LLC ("Karum Group"), and Karum Card Services S.A. de C.V., SOFOM, E.N.R. ("KCS") to implement the private label credit card program. In 2015, Karum Holdings, Karum Group, and KCS ("Karum") commenced this lawsuit against Lowe's Inc. and Lowe's Mexico ("Lowe's") for purportedly breaching the parties' agreements. The parties are scheduled to proceed to trial on December 11, 2017.

In April 2015, Karum submitted to Lowe's a summary damages model and estimate of damages. In anticipation of trial, Lowe's has filed a motion *in limine* to preclude Karum from offering testimony of its damages model and to exclude the underlying model altogether. For the reasons stated herein, Lowe's motion is granted insofar as it seeks to exclude Karum's witnesses from testifying to the damages model at trial.

**Background**

In March 2015, Karum provided initial disclosures of individuals likely to have discoverable information to support its claims or defenses, as required by Federal Rule of Civil Procedure 26(a). *See generally* Pls.' Rule 26(a) Disclosures, ECF No. 201. As part of its initial disclosures, Karum notified Lowe's that Karum Chairman and Chief Executive Officer, Peter Johnson, ("Johnson") and Chief Financial Officer, Russell Ouchida ("Ouchida"), among others, were persons with knowledge of discoverable information relevant to the dispute. *Id*. at 2–4. Karum did not designate any potential witnesses in the disclosure as experts. *See id*. at 2–5.

In April 2015, Karum provided Lowe's with a summary damages model and estimate of damages, as required by Rule 26(a)(1)(A)(iii). *See generally* Defs.' Mot. *in Limine* No. 1 to Exclude Evidence of Pls.' Damages Model ("Defs.' Mot."), Ex. D, Lowe's Computation of Damages April 22, 2015 ("Damages Model"), ECF No. 175-4. At that time or sometime shortly thereafter, Karum advised Lowe's that it "did not intend to use a retained expert to present damages, but rather would rely on

2

opinion testimony" from Johnson. *See* Karum's Mem. Opp'n Defs.' Mot. Strike Pls.' Supplemental April 22, 2017 Damages Model ("Pls.' Resp. Defs.' Mot. Strike Revised Damages") at 1, ECF No. 126. Karum's statement in this regard is worth quoting.

> Johnson can opine as a lay witness under Federal Rule of Evidence 701 on the subject of Karum's estimated damages by virtue of his perception of Karum's business gained through his management of that business. But he might also qualify as an expert under Federal Rule of Evidence 702, through the knowledge and experience he has gathered from decades in the credit business. In fact, Johnson has served on the audit committees of multiple public companies, and as such, is recognized by the SEC to have financial expertise. Either way, Lowe's knows Johnson and will not be surprised by his testimony.

*Id.* n.1.

In September 2017, Lowe's filed a motion *in limine* to preclude Johnson and Ouchida from testifying as to Karum's damages model. Defs.' Mot. at 5–8, ECF No. 159. Lowe's argues that any testimony by Johnson and Ouchida regarding the model would not be rationally based on their own perceptions and would require specialized knowledge in contravention of Federal Rule of Evidence 701. *Id.* In response, Karum argues that it does not intend (and has never intended) to offer lay-opinion testimony under Rule 701, but rather that Johnson will provide expert testimony regarding the damages model under Rule 702.[1] Karum's Opp'n Lowe's Mot. *in Limine* ("Pls.' Resp.") at 1, ECF No. 184. Karum further asserts that Johnson was disclosed as an expert "from day one" of this litigation and that, in the

---

[1] Karum refers to Lowe's suggestion that Johnson would provide lay opinion testimony as an "epic misstatement" and "unadulterated misdirection." Pls.' Resp. at 1. Of course, as we have seen, it was Karum who first raised this prospect in the first place.

footnote quoted above, Karum "reminded" Lowe's that it intended to call Johnson as an expert witness under Rule 702. *Id.* at 1 n.1.

## **Legal Standard**

Under Rule 26(a)(2), a party "shall disclose to other parties the identity of any person who may be used at trial to present evidence" under Federal Rule of Evidence 702. Where, as here, the Court does not order a different disclosure deadline, the disclosures must be made "at least 90 days before the date set for trial or for the case to be ready for trial . . . ." Fed. R. Civ. P. 26(a)(2)(D)(i). Expert witnesses who are not retained as experts or whose duties do not regularly involve giving expert testimony need not provide a written expert report, but a party offering any expert witness must always: (1) state the subject matter on which the expert witness is expected to present evidence under Federal Rule of Evidence 702 and (2) provide a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(B), (C). "[A]ll disclosures under Rule 26(a) must be in writing, signed, and served." Fed. R. Civ. P. 26(a)(4).

Proper disclosure of an expert witness requires formally designating the witness as an "expert." *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757–58 (7th Cir. 2004). Moreover, the "duty to disclose a witness *as an expert* is *not* excused when a witness who will testify as a fact witness *and* as an expert witness is disclosed as a fact witness." *Tribble v. Evangelides*, 670 F.3d 753, 759–60 (7th Cir. 2012) (citing *Musser*, 356 F.3d at 757) (emphasis in original). "This is a strict but well-founded requirement: 'Knowing the identity of the opponent's expert witnesses

allows a party to properly prepare for trial.'" *Id.* at 759 (citing *Musser*, 356 F.3d at 757).

The exclusion of non-disclosed evidence, including an expert witness, "is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser*, 356 F.3d at 758; *see David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785–86 (7th Cir. 2000). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Caterpillar*, 324 F.3d at 857 (quoting *Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.,* 100 F.3d 1353, 1363 (7th Cir. 1996)).

Failure to disclose a witness as an expert is usually not harmless because, for example, "[w]ithout proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report.*" Tribble*, 670 F.3d. at 759–60 (citing *Musser*, 356 F.3d at 758). Moreover, "a misunderstanding of the law does not equate to a substantial justification for failing to comply with the disclosure" requirements. *Musser*, 356 F.3d at 758.

Finally, "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Caterpillar*, 324 F.3d at 857 (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999)). However, in making this determination, the district court should consider and weigh the following factors: (1)

5

the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Caterpillar*, 324 F.3d at 857; *see also Bronk v. Ineichen,* 54 F.3d 425, 428 (7th Cir.1995) (citing *Spray–Rite Serv. Corp. v. Monsanto Co.,* 684 F.2d 1226, 1245 (7th Cir. 1982)).

## Analysis

Lowe's has moved to exclude testimony as to Karum's damages model because, it argues, such testimony requires an expert and Karum has failed to disclose any witness as an expert as required by F.R.C.P. 26(a). Lowe's also contends that Karum's failure to disclose is not justified and is not harmless because it is prejudicial. In response, Karum concedes that no witness may provide lay-opinion testimony as to its damages model and instead asserts that it has adequately disclosed Johnson as an expert witness. For the reasons stated below, the Court agrees with Lowe's and grants Lowe's motion to exclude Karum from offering any testimony regarding its damages model.

**I.     Karum's Rule 26(a) Violation**

Karum argues that it timely disclosed Johnson as an expert witness in its March 2015 Rule 26(a) disclosures and then "reminded" Lowe's of this in a footnote to a response brief in June 2017. *See* Pls.' Resp. at 1; Pls.' 26(a) Disclosures at 2–4; Pls.' Mot. Strike Revised Damages at 1. As Karum sees it, its March 2015 disclosure of Johnson as a possible witness, and its accompanying disclosure of the

6

damages model upon which Johnson will rely, were sufficient to disclose Johnson as an expert witness. Pls.' Resp. at 1. Lowe's counters that, until now, Karum has consistently represented that Johnson would provide lay-opinion testimony and that Karum now claims otherwise because it realizes that it erred in believing that Johnson would be allowed to do so. Defs.' Reply Supp. Mot. *in Limine* No. 1 to Exclude Evidence of Pls.' Damages Model ("Defs.' Reply") at 1–4, 7, ECF No. 200.

The Court finds that Karum's purported disclosure of Johnson as an expert witness was plainly inadequate. Karum's March 2015 Rule 26(a) disclosures listing Johnson as a potential witness did not designate him—or anyone else for that matter—as an expert witness. *See* Pls.' Rule 26(a) Disclosures at 2–4; *Musser*, 356 F.3d at 757–58; *Tribble*, 670 F.3d at 759–60. Moreover, Karum affirmatively stated in a June 2017 brief that "Karum advised Lowe's that it did not intend to use a retained expert to present damages, but rather would rely on opinion testimony through Karum's Chief Executive Officer, Peter Johnson."[2] Pls.' Resp. Defs.' Mot. Strike Revised Damages at 1. Karum's statement suggests that it might not have understood that it needed to disclose Johnson as a *non-retained* expert under Rule 26(a)(2)(C), but its possible misunderstanding of the law is not an excuse. *See Musser*, 356 F.3d at 758.

---

[2] Karum's footnote to this statement, suggesting that Johnson "might also qualify as an expert," Pls.' Resp. Defs.' Mot. Strike Revised Damages at 1, does not suffice as a disclosure of Johnson as an expert witness—particularly here, where Karum affirmatively stated that it intended to call him to provide only lay-opinion testimony as to the damages model.

7

Finally, Karum's would-be disclosure of Johnson as an expert in its October 2017 response to Lowe's motion *in limine* comes too late. Even if it were otherwise adequate, with trial scheduled for December 11, 2017, Karum was required to disclose an expert witness by September 12, 2017. Fed. R. Civ. P. 26(a)(2)(D)(i). Moreover, Lowe's apparently still has not received a summary of the facts and opinions to which any purported expert witness is expected to testify, as required by Rule 26(a)(2)(C), *see* Defs.' Reply at 4, and the Court does not find Karum's response brief to Lowe's motion *in limine* sufficient for this purpose. To the extent Karum might assert that its damages model satisfies Rule 26(a)(2)'s disclosure requirement, this extensive document never refers to Johnson or summarizes what Johnson will say about the hundreds of figures, assumptions, and conclusions contained in it.

For the foregoing reasons, the Court finds that Karum violated Rule 26(a) by failing to disclose an expert witness to testify at trial to its damages model, and its prior disclosures related to Johnson do not meet this obligation.

## II. Karum's Failure to Disclose Experts Was Not Harmless or Justified

Having found that Karum has failed to timely disclose an expert witness to testify regarding the damages model, the Court next considers whether the violation was harmless or substantially justified. *See Musser*, 356 F.3d at 758; *Caterpillar*, 324 F.3d at 857.

As to harmlessness, the Court finds that the *Caterpillar* factors weigh in favor of excluding Johnson as an expert witness. Lowe's argues that it would be

prejudiced if Johnson were allowed to testify as an expert at trial, because it had no reason to take discovery regarding Johnson's alleged qualifications or expertise. Defs.' Reply at 6. According to Lowe's, it is thus prejudiced in its ability to challenge Johnson's qualifications or the admissibility of his expert testimony under Rule 702. *Id*. Moreover, although Lowe's has a rebuttal expert ready to critique Karum's damages model, as Lowe's sees it, it could have prepared more effectively, or it may have chosen a different path, if it had better understood Johnson's purported qualifications and possessed a summary of the facts and opinions to which he would be giving expert testimony, as required by Rule 26(a)(2)(C). *Id*. Lowe's also argues that, if Johnson were disclosed as an expert, it would have been entitled to discover the communications between Johnson and Karum's counsel that he relied on in forming his expert opinion. *Id.* at 6 (citing *Luminara Worldwide, LLC v. RAZ Imports, Inc.*, 2016 WL 6774231, at *2–4 (D. Minn. Nov. 15, 2016)).

The Court finds that allowing Johnson to testify as a damages expert witness at the upcoming trial would inflict undue prejudice upon Lowe's. Although—as Karum points out—Lowe's has been familiar with Johnson since the beginning of litigation in 2015 and had reason to believe he would testify in some capacity, Karum has (until now) consistently stated that Johnson will be offered to provide only lay-opinion testimony. In doing so, Karum has given Lowe's no reason to request discovery as to his qualifications or his understanding of and role in preparing the damages analysis. *See Musser*, 356 F.3d at 759 (finding prejudice where defendants "had to rely on depositions conducted without the knowledge that

9

. . . the witnesses would be used as experts"); *Tribble,* 670 F.3d at 760 (finding prejudice where, even though defendants knew the witnesses were going to testify, plaintiff's disclosures indicated it would be only lay-opinion testimony). And, although Lowe's has a rebuttal expert, the scope of his testimony appears to be substantially limited to rebutting Karum's underlying damages model, rather than challenging Johnson's own qualifications or understanding of the model. *See generally* Expert Report of James L. McGovern, ECF No. 171; Karum's Mem. Law Supp. Mot. Strike Portions of James McGovern's Report, ECF No. 168-2; Defs. Mem. Opp'n Pls.' Mot. Strike Expert Report, ECF No. 214.

Further, the prejudice to Lowe's is not curable without substantially disrupting an expeditious trial in this case. As in *Musser*, there is not "ample time remain[ing] for further discovery" to cure the prejudice before the December trial. *See* 356 F.3d at 759. And even if there were enough time before trial, "[l]ate disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery." *Finwall v. City of Chi.*, 239 F.R.D. 494, 501 (N.D. Ill. 2006); *see Aon Risk Serv., Inc. of Ill. v. Shetzer,* 2002 WL 1989466, at *6 (N.D. Ill. Aug. 27, 2002) (rejecting argument that late disclosure was harmless because there was time to conduct deposition before trial); *see also, e.g., Rick v. Toyota Indus. Equip. Co.,* 1994 WL 484633, at *1 (N.D. Ill. Sept. 2, 1994) (rejecting that reopening of discovery is curative of prejudice).

Additionally, the Court finds an element of willfulness in Karum's failure to disclose an expert witness to prove its damages in this case. As in *Tribble*, Karum

knew early on that it would call Johnson to offer testimony regarding its damages model, but it decided not to designate him as an expert under Rule 26(a)(2). Perhaps Karum did not wish to expose its Chairman and CEO to the type of extensive, probing discovery that would be required, had Johnson been designated as an expert witness. Or perhaps Karum did not want to give Lowe's cause to seek discovery into Johnson's qualifications or his understanding of the complicated model. Whatever the reason, Karum made its election, and it is left to live with the consequences. *See Tribble*, 670 F.3d at 759 ("They knew that they wanted to elicit exactly the testimony that they did . . . but, nevertheless, they did not disclose [the witness] as an expert.").

Lastly, the Court also finds that Karum's failure to disclose an expert witness was not substantially justified. In Karum's response to Lowe's motion *in limine*, Karum does not attempt to provide justification for its failure to disclose an expert witness, but rather it insists that it had properly done so all along. *See* Pls.' Resp. at 1, 3–4. As noted, this assessment was incorrect.[3] Therefore, for the reasons discussed, the Court finds that Karum failed to disclose Johnson or any other individual as an expert witness as to damages under Rule 26(a)(2) and grants Lowe's motion on that basis.

---

[3] One possible justification for Karum's failure to disclose is that, until Lowe's filed its motion *in limine*, Karum incorrectly believed that Johnson's testimony would be admissible as lay-opinion testimony. However, as noted, such a belief "is not justification; at best, it's just a misunderstanding of law." *See Musser*, 356 F.3d at 757. The alternative explanation is that Karum knew all along that its damages model required expert testimony, and it decided to "press[ ] their luck" without disclosing an expert witness. *See Tribble*, 670 F.3d at 760. But this too cannot relieve Karum of its obligations under Rule 26(a)(2).

11

## III. Why Rule 26(a)(2) Disclosures Matter

This case aptly illustrates the wisdom of Rule 26(a)(2). In addition to challenging Johnson's anticipated expert testimony on inadequate disclosure grounds, Lowe's contends that his testimony does not satisfy the requirements of Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Of course, when assessing the admissibility of expert testimony under Rule 702 and *Daubert*, district courts employ a three-part analysis: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The proponent of the expert bears the burden of demonstrating to the Court—which must act as an evidentiary gatekeeper—that the expert's testimony would satisfy the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Karum argues that Johnson is qualified to give expert testimony on the damages model by virtue of his relevant business experience and education, that the information would be helpful to the trier of fact, and that Johnson's proposed testimony and the damages model are reliable. Pls.' Resp. at 2–10. But Karum's failure to adequately disclose Johnson as an expert witness materially impedes the Court's ability evaluate whether Karum has met its burden on these issues. For example, Karum asks the Court to rely on a few of Johnson's statements in a

deposition, and a two-page sworn affidavit, to assess his qualifications. Pls.' Resp. at 2–3. However, as discussed above, Karum has not provided Lowe's or the Court with a summary of what Johnson will actually *say* at trial about the damages model, and the Court is left largely to guess as to what Johnson's expert testimony would be.

Of course, it may well be that Karum intends to have Johnson adopt the entire damages model as his own, including all of the facts, assumptions, and conclusions contained therein. But, if so, Johnson stated in his deposition that the damages model was built not by him, but by "experts [with] very significant expertise that worked for us in the portfolio management team," supervised by Ouchida. Johnson Dep. 378:8–25, ECF No. 175-3. Nor did Johnson oversee its development. *See id.*; Ouchida Dep. 30:24–31:4, ECF No. 175-2. And, according to Ouchida, the spreadsheet underlying the model was a joint effort of two employee-analysts who "understood the . . . model much better than I do." Ouchida Dep. 30:24–31:4. Taken together, Johnson and Ouchida's statements raise significant concerns that Johnson would be "just parroting the opinion" of other experts (whose own purported expertise the Court has had no opportunity to review). *See Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002).

Rule 26(a)(2) was designed to prevent such dilemmas. For if Karum had adequately disclosed Johnson as an expert, Lowe's would have had the opportunity to obtain discovery into Johnson's qualifications, as well as his role in creating the damages model that Karum would like to present at trial. Having failed to do so,

13

Karum falls short of satisfying its burden to demonstrate, based upon the record, that Johnson is qualified to testify as to the methodologies and conclusions set forth in Karum's damages model. *See Myers*, 629 F.3d at 644; *Lewis*, 561 F.3d at 705.

## Conclusion

For the reasons stated herein, Lowe's motion *in limine* [159] to exclude Peter Johnson from offering testimony regarding Karum's damages model is granted.

**IT IS SO ORDERED.**                    ENTERED   11/21/17

*[signature: John Z. Lee]*

_____

**John Z. Lee**
**United States District Judge**